IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 6:11cr0004-1 |
| | ) | |
| v. | ) | <u>2255 MEMORANDUM OPINION</u> |
| | ) | |
| GREGORY THOMAS MILLER, | ) | By: Norman K. Moon |
| Petitioner. | ) | United States District Judge |

Petitioner Gregory Thomas Miller, a federal inmate proceeding *pro se*, filed this motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, challenging his 300-month sentence for producing, possessing, and transporting child pornography, and possessing marijuana. Miller claims that counsel provided ineffective assistance on multiple grounds.[1] The government filed a motion to dismiss and Miller has responded, making this matter ripe for consideration. I conclude that Miller has not stated any claim for relief under § 2255 and that the government's motion to dismiss must be granted.

I.

On October 16, 2010, Miller was riding in the passenger seat of his vehicle, being driven by a minor female ("L.A.J."), when the vehicle was stopped at a sobriety checkpoint on the Blue Ridge Parkway in Virginia. L.A.J. was not related to Miller, had no driver's license or permit, and had recently been reported missing to the National Crime Information Center ("NCIC").

---

[1] Miller has also asked that I "be recused from eligibility to consider the [§ 2255] motion, as portions of it implicate my abuse of discretion in the proceedings . . ." Disqualification of federal district court judges is governed by 28 U.S.C. § 455. In pertinent part, the statute provides:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

This standard is analyzed objectively by determining whether a reasonable person with knowledge of the relevant circumstances might question the judge's impartiality. *See United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003). Miller offers no factual support for his allegation that I am biased. Further, 28 U.S.C. § 2255 expressly intends for the sentencing judge to address § 2255 claims. Accordingly, Miller's request that I recuse myself is denied. *See also United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998) (noting that a judge is not required to recuse himself because of "unsupported, irrational, or highly tenuous speculation") (citations omitted).

Officers observed a marijuana seed on the seat of Miller's truck and conducted a search of the vehicle. The search uncovered marijuana, women's underwear, a bag of recently purchased sex toys, two glass pipes containing marijuana residue, a smoked marijuana cigarette, and various electronic devices, including digital recording equipment, several memory cards, and a laptop computer.

When questioned by the officers, L.A.J. stated that she had been driving with Miller from Michigan, and had shared a hotel room with him on two nights. Miller admitted that he took L.A.J. from Michigan without her mother's permission or knowledge and stated that he was driving L.A.J. to Texas, where her father lived. Miller claimed he showed the officers text messages indicating that L.A.J.'s father was aware of, and in agreement with, that plan. Miller also claimed that he had purchased the sex toys for his adult girlfriend who lived in Louisiana. Miller refused the officers' request for consent to search his computer, and stated that the computer contained nude pictures of his girlfriend that she would not want the officers to see.[2]

Thereafter, officers obtained a warrant to search Miller's electronic devices.[3] The search warrant authorizing the search was supported by an affidavit authored by Federal Bureau of Investigation Special Agent James Lamb, who was not present at the initial stop.[4] When searching the laptop, officers discovered videos of L.A.J. performing oral sex on Miller.

---

[2] Miller denies claiming that the computer contained nude pictures of his girlfriend.

[3] Officer Mark Cyr improperly looked at pictures on Miller's camera prior to obtaining a warrant, but found nothing of significance.

[4] As set out in the opinion by the United States Court of Appeals for the Fourth Circuit, Lamb's affidavit included the following statements in support of probable cause:

> (1) Miller was a 57-year-old man traveling with L.A.J., a 16-year-old girl who was not related to him.
> (2) L.A.J. was reported as an outstanding missing person or runaway with NCIC.
> (3) Miller admitted that he took L.A.J. from Michigan without her mother's permission.
> (4) Miller's vehicle contained a bag of recently purchased sex toys.
> (5) L.A.J. initially denied that Miller took pictures of her during their trip, but later acknowledged that Miller had taken pictures of her.

On July 21, 2011, Miller was charged in a ten-count superseding indictment as follows: (1) seven counts of producing child pornography, in violation of 18 U.S.C. § 2251(a); (2) one count of transporting child pornography, in violation of 18 U.S.C. § 2252(a)(1); (3) one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(A) and 2252(b)(2); and (4) one count of possession of marijuana, in violation of 21 U.S.C. § 844.

Miller moved to suppress the evidence found on his computer and requested a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978).[5] In support, he argued that the affidavit supporting the warrant failed to establish probable cause, and contained material omissions.[6] I conducted evidentiary hearings and denied both Miller's motion to suppress and his request for a *Franks* hearing. Thereafter, Miller filed an additional motion to suppress and a second motion for a *Franks* hearing, arguing that Agent Lamb's affidavit contained additional omissions. Specifically, (1) that L.A.J.'s father had removed her as a runaway with NCIC on the night of Miller's arrest; (2) that Miller had text messages from L.A.J.'s father showing that he was aware she was traveling with Miller; (3) that officers improperly viewed images on Miller's digital camera during the initial stop; and (4) that officers refused to return items seized from his

---

(6) Miller refused to give officers consent to examine his computer, claiming that the computer contained "pornographic" pictures of his girlfriend.
(7) L.A.J.'s mother reported that she and L.A.J. formerly lived in a trailer on Miller's property for approximately one year but moved after L.A.J.'s mother found Miller sleeping in a bed with L.A.J. and another 14-year-old minor, all of whom were fully clothed.

*United States v. Miller*, 534 F. App'x 204, 206-207 (4th Cir. 2013).

[5] When a defendant seeks a *Franks* hearing by alleging omissions in an affidavit, the defendant must first "show[] that [the officers] omitted material facts that when included would defeat a probable cause showing . . . and that the omission was designed to mislead or was made with reckless disregard of whether it would mislead." *United States v. Blauvelt,* 638 F.3d 281, 289 (4th Cir. 2011) (internal quotations and citations omitted).

[6] Specifically, Miller listed the following material omissions in the affidavit supporting the warrant: (1) the reason that his vehicle was initially stopped; (2) that officers conducted a warrantless search of his electronic devices during that stop; (3) Miller's statement that the sex toys were for his adult girlfriend in Louisiana; and (4) that he was not referring to L.A.J. when he stated that he had photographs of his girlfriend on his computer.

3

vehicle. Miller also argued that he never stated that the pictures of his girlfriend on his computer were "pornographic."

I held a second suppression hearing, as well as a *Franks* hearing. At the *Franks* hearing, Agent Lamb testified that he was not aware that Miller had told the arresting officers that the sex toys were for his adult girlfriend, that he was not aware that Miller or L.A.J. had communicated with L.A.J.'s father, and that he was not aware that arresting officer Mark Cyr had improperly looked at pictures on Miller's digital camera before he applied for a warrant. Officer Cyr then testified that he was not aware of any text messages from L.A.J.'s father, that Miller had informed him that the laptop computer contained "inappropriate nude photographs" of his girlfriend, and that the pictures he viewed on Miller's digital camera were non-pornographic vacation photos. Miller then testified that L.A.J.'s father knew that he was driving L.A.J. to Texas and that he had shown the arresting officers text messages from L.A.J.'s father.

Following the hearing, I concluded that Miller failed to show a *Franks* violation, I denied Miller's *Franks* motion, and I concluded that the omission of innocuous facts by the arresting officers to Agent Lamb were not deliberate misrepresentations. I then held that the uncontroverted facts in Agent Lamb's affidavit provided the magistrate judge with a substantial basis for concluding that probable cause existed to search Miller's laptop computer.

Miller then entered a conditional guilty plea to all counts pursuant to a plea agreement, which was filed with the court pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and was fully endorsed by Miller, his counsel, and the Assistant United States Attorney. The conditional plea of guilty preserved Miller's right to appeal certain pretrial rulings, including my rulings on Miller's motions to suppress evidence. At the guilty plea hearing, Miller affirmed that he was "fully satisfied with the counsel, representation, and advice given" by his attorney. I

4

found that Miller was fully competent and capable of entering an informed plea, and also found his plea to be knowing and voluntary.

On October 30, 2012, I conducted Miller's sentencing hearing, where Miller was present with counsel. I adopted the Presentence Investigation Report ("PSR") and the parties did not object. The PSR recommended a total offense level of 43 and a criminal history category of I resulting in a guideline sentence of 2,892 months. I imposed a sentence of 300 months. As permitted by his conditional plea of guilty, Miller appealed my denial of his motions to suppress to the United States Court of Appeals for the Fourth Circuit, which affirmed my rulings. *United States v. Miller,* 534 F. App'x 204, 210 (4th Cir. 2013) (unpublished).

## II.

To state a claim for relief under § 2255, a petitioner must prove that one of the following occurred: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Miller bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965); *Hall v. United States*, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

To establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668, 669 (1984). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. *Id.* at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

5

In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance; that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In the plea context, the *Strickland* prejudice inquiry focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). The petitioner "bears the burden of proving *Strickland* prejudice." *Fields*, 956 F.2d at 1297 (citing *Hutchins*, 724 F.2d at 1430-31).

### III.

Miller asserts 18 grounds for ineffective assistance of counsel.[7] For clarity, this opinion groups Miller's claims into the following categories: (1) investigation; (2) legal advice and communication; (3) legal arguments and motions; (4) appellate representation; and (5) search and seizure. As an initial matter, I note that Miller's claims of dissatisfaction with counsel's representation conflict with Miller's affirmance under oath at his plea colloquy that he was fully satisfied with his counsel. Absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted); *see also*

---

[7] Miller's lengthy motion to vacate also includes passing references to claims not involving ineffective assistance of counsel, such as alleged court bias and the denial of a computer expert. However, such claims are barred by Miller's plea agreement, which waives his right to collateral attack except for claims of ineffective assistance of counsel. "A criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F. 3d. 216, 220 (4th Cir. 2005). The record establishes that Miller entered a knowing and voluntary guilty plea, and he affirmed his understanding that he was waiving his right to collaterally attack the judgment and sentence.

*Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (noting that statements made to the court at a Rule 11 hearing "constitute a formidable barrier in any subsequent collateral proceedings."). Therefore, Miller's claims of ineffective assistance of counsel must be considered in light of the "strong presumption" of veracity as to his admissions during the plea colloquies that he was completely satisfied with counsel's representation. *Lemaster*, 403 F.3d at 221.

### A. Investigation

In claims 5, 6, 7, 8 and 11 Miller claims that counsel provided ineffective assistance by failing to take certain investigative steps.

(1) Deposition of Law Enforcement Officers (claim 5)

Miller asserts counsel should have deposed all law enforcement officers present while his vehicle was stopped and searched at the sobriety checkpoint. He claims that officers Mark Cyr and Kathryn Brett provided false pretrial testimony when they denied searching Miller's electronic devices during the traffic stop, and asserts that the "up to [six] other" officers present should have been investigated. However, Miller does not identify the other officers, or specify their likely testimony.[8] *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); *see also United States v. Hawkins*, 531 F. App'x 342, 345 (4th Cir. 2013) (observing that "[c]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel") (internal quotation omitted). Accordingly, this claim will be dismissed.

(2) Investigation of Witnesses (claim 6)

---

[8] Miller states only that, "not all of the officers . . . would be willing to lie about the circumstances of the search."

Miller asserts that L.A.J. was an "unreliable witness" who had changed her story "multiple times" and had a "long history of drug abuse and violent episodes." He further asserts that investigating L.A.J.'s mother would have revealed "questionable discharge from the service, absconding or duplicity." Finally, Miller asserts that counsel should have subpoenaed his girlfriend and his daughter's friends as witnesses. Miller argues his girlfriend would have testified that Miller could not have been the man shown in the video, because he could not sustain an erection, and that his daughter's friends would have testified that he did not make any inappropriate advances towards them. However, whether to call a witness "necessitate[s] the weighing of risks and returns that is an intrinsic part of defense counsel's choice of strategy." *Goins v. Angelone*, 52 F. Supp. 2d 638, 661 (E.D. Va. 1999). Further, these alleged errors do not undermine the identification evidence against Miller, including identification by L.A.J., Miller's unique abdominal scar, and that the videos were recorded on a camera found in Miller's truck, and were recovered from Miller's laptop computer.[9] Accordingly, Miller fails to show prejudice under *Strickland* and this claim will be dismissed.

(3) Investigation of Hotel Rooms, Phone Records, and Faxes (claims 7, 8, 11)

Miller claims that investigation into the specific hotel rooms he rented with L.A.J. would have shown that the rooms contained two beds, contradicting the governments "insinuat[ion] that L.A.J. and [Miller] slept together in motels during the drive from Michigan to Maryland." Miller further claims that counsel should have subpoenaed phone records which would have shown that L.A.J. sent text messages to her father informing him that Miller had picked her up in Michigan and would drop her off in Texas, and that L.A.J.'s father "was in agreement with that plan."

---

[9] Miller's claims that counsel should have: (1) subpoenaed his medical records, purportedly diagnosing him with erectile dysfunction in 2000 or 2001; and (2) obtained a medical expert to testify regarding the abdominal scar, also fail for the same reasons.

8

Finally, Miller asserts that counsel should have obtained faxes L.A.J.'s father sent to another attorney showing L.A.J.'s father was the custodial parent.

Miller's allegations that counsel did not comply with his every demand or follow every possible lead does not create a cognizable claim under *Strickland,* because Miller has not overcome the strong presumption that counsel's performance was within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Moreover, whether the hotel rooms contained one or two beds, whether L.A.J. sent text messages to her father informing him that she was with Miller, and whether L.A.J.'s father was the custodial parent, are not relevant to the charges against Miller, namely producing, possessing and transporting child pornography.[10] Thus, counsel was not ineffective for failing to investigate these issues.

Finally, to the extent that Miller argues that the number of beds in the hotel rooms, or the text messages, would have undermined the determination that probable caused existed to support the warrant, these claims have already been reviewed and denied by the Fourth Circuit. Issues raised and decided on direct appeal may not be recast "under the guise of a collateral attack." *Stitt v. United States*, 369 F. Supp. 2d 679, 685 (E.D. Va. 2005) (*citing Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)). The Fourth Circuit held that, "even excluding all controverted statements from Agent Lamb's affidavit and including the omissions that Miller alleges, the affidavit would support the magistrate judge's finding of probable cause."[11] *Miller*, 534 F. App'x at 210. Accordingly, these claims are dismissed.

---

[10] Miller's argument regarding the absence of evidence from a "standard rape-kit test" is also meritless. Miller presents no evidence that such a procedure was performed; moreover, Miller was not charged with rape.

[11] The Fourth Circuit held as follows:

Accepting Miller's arguments, Agent Lamb's affidavit would still have included the facts that (1) neither Miller nor L.A.J. had a valid driver's license; (2) L.A.J. was the subject of two outstanding missing person reports at the time of Miller's arrest; (3) L.A.J., a minor, was traveling across the country with Miller, a 57-year-old man who was not her relation; (4) Miller and L.A.J. shared a hotel room on two nights, though

9

## B. Legal Advice and Communication

In claims 1, 13, 14, and 15 Miller clams that counsel provided ineffective assistance by providing inaccurate advice regarding his guilty plea and failing to properly communicate with him regarding trial preparation.

(1) Guilty plea (claim 1)

Miller asserts counsel provided ineffective assistance by advising him to enter an "ill advised" conditional plea of guilty. Specifically, Miller states that counsel told him that issues involving "illegally withheld or unconstitutionally obtained" evidence "could not be considered by a jury but could only be presented to an appellate court." Finally, Miller asserts, "he was allowed no time to discern what was in the [plea agreement] documents."

Miller fails to show any improper advice from counsel, and makes only conclusory statements that his guilty plea was "ill advised." Miller's conditional guilty plea allowed him to raise appellate claims concerning the pretrial rulings on the motions to suppress and challenges to the validity of the search warrant for Miller's electronic devices. Because Miller fails to show that counsel's advice regarding the conditional guilty plea was deficient, this claim will be dismissed.

Likewise, Miller presents no evidence to support his claim that he was pressured into pleading guilty, and did not have adequate time to review the plea agreement. At the guilty plea

---

Miller claimed that they slept in separate beds; (5) Miller claimed to be taking L.A.J. from Michigan to Texas, but actually took her in the opposite direction, to Virginia; (6) Miller's truck contained a bag of recently purchased sex toys; (7) the truck contained marijuana and other drug paraphernalia; (8) the truck contained a laptop computer, digital recording devices, and numerous memory cards; (9) Miller told officers that he did not want them to search his laptop computer because it contained nude or inappropriate pictures of his adult girlfriend; (10) L.A.J. admitted to officers that Miller took pictures of her during their travels; and (11) L.A.J.'s mother reported to officers that she was concerned that Miller had an inappropriate sexual relationship with L.A.J. Even including the additional information that officers searched Miller's camera and found no inappropriate pictures, the magistrate judge would still have had a substantial basis for finding probable cause that Miller had created or possessed child pornography or had contributed to the delinquency of a minor.

*Miller*, 534 F. App'x at 210.

10

Case 6:11-cr-00004-NKM   Document 160   Filed 07/09/15   Page 10 of 20   Pageid#: 1795

hearing, Miller affirmed that no one had tried to force him to plead guilty. Further, I asked, "Have you had ample time to consult with your attorney?" and Miller replied, "Yes, sir." "Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. Because "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," § 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false" except in the case of extraordinary circumstances. *Lemaster*, 403 F.3d at 221. Accordingly, this claim will be dismissed.

(2) Communication (claims 13, 14, and 15)

In claim 13, Miller contends that counsel refused to provide him with copies of the discovery, allowing him to merely "peek at [it] through the bulletproof glass." Miller asserts, without support, that "it is clear now . . . that [counsel] was unaware of the exculpatory nature of much of the discovery . . . ." However, Miller fails to specify what evidence was withheld, what evidence was exculpatory, or how the evidence would have changed Miller's decision to plead guilty. Miller must do more than make conclusory assertions regarding the effectiveness of counsel to prevail on a § 2255 motion. *See United States v. Roane*, 378 F.3d 382, 400 (4th Cir. 2004) (" 'Airy generalities, conclusory assertions and hearsay statements [do] not suffice' to stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing . . . .") (quoting *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987)). Accordingly Miller has not shown ineffective assistance of counsel under *Strickland* and claim 13 will be dismissed.

In claim 14, Miller asserts that by denying access to discovery materials, counsel "obstructed [his] ability to assist in . . . the defense . . . ." In support, Miller references a hearing where the government introduced certain photos into evidence, and pointed out the dates imprinted on the photos. Miller complains that counsel "shushed" him when Miller advised that

11

the camera reset its date information at "odd intervals and thus the dates on the photos taken using that camera are unreliable." However, Miller cannot show prejudice under *Strickland* because whether the dates on the photos were reliable was not exculpatory.[12] It had no effect on the fact that the videos showed Miller engaging in sex acts with a minor. Accordingly, claim 14 will be dismissed.

In claim 15, Miller asserts that counsel failed to inform him "of the progress of the proceedings." Miller claims that counsel never informed him of the felony charges alleged in the February 23, 2011 Indictment, and that he found out about these charges only after he had a heart attack in Italy in March 15, 2011 and was provisionally arrested and extradited to the United States. Miller states this delay "impeded [his] ability to gather evidence and witnesses in building a defense." However, Miller does not specify what evidence he failed to obtain due to this purported delay, or explain how that prejudiced his defense. Conclusory allegations of ineffective assistance of counsel, without factual support, are insufficient to raise a constitutional issue or require an evidentiary hearing. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992). Accordingly, claim 15 will be dismissed.

**C. Legal Arguments and Motions**

In claims 2, 9, 10, 12, and 16 Miller argues that counsel failed to file certain motions and make certain legal arguments. However, Miller has failed to overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 671 (quoting *Michel v. Louisiana*, 350 U.S. 91, 100 (1955)).

(1) Motion for Return of Property (claim 2)

---

[12] In his response to the government's motion to dismiss, Miller asserts that the "camera reset issue challenges the accuracy of the purported dates on the videos, which were more probably created between June, 2010, and August, 2010, while I was in Africa, than in 2008." However, Miller provides no support for this assertion. Moreover, he affirmed in his plea agreement that there was a sufficient factual basis to support the charges against him, including producing child pornography.

12

Miller argues that counsel should have moved for the return of the property seized from Miller prior to the issuance of the search warrant. As outlined by the Fourth Circuit, the government had probable cause to seize the electronic devices at the checkpoint stop, and thereafter obtain a search warrant to examine the evidence. Moreover, Miller fails to show that a motion for the return of the property would have been successful, stating only that his "possessory interest in the items was critical" because it contained contact numbers and information necessary for employment. The Sixth Amendment does not require counsel to raise a meritless argument. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010). Accordingly, this claim will be dismissed.

(2) Motions Regarding Cell Phone Disappearance (claim 9)

Miller argues that counsel "failed to make an issue" regarding the disappearance of his cell phone while in the government's custody, and states that counsel should have made a motion "based on the government's obstruction of justice." Miller asserts that the cell phone contained "text messages to and from L.A.J.'s father" indicating the father's agreement that Miller transport L.A.J. from Michigan to Texas, which Miller asserts would have shown L.A.J. was "legitimately in his company." Contrary to Miller's arguments, counsel did bring the missing cell phone to the court's attention.[13] Further, during the same hearing, counsel questioned Officers Lamb and Cyr regarding the alleged text message communications with L.A.J.'s father.[14] Finally, Miller presents no evidence that the cell phone was deliberately lost or destroyed by the government. Accordingly, this claim will be dismissed.

(3) Motion Related to Officer Cyr's Testimony Regarding the Camera (claim 10)

---

[13] Counsel questioned Officer Cyr during the April 18, 2012 hearing regarding the cell phone's disappearance.

[14] Officer Cyr denied that Miller had shown him a text message from L.A.J.'s father.

13

Miller asserts that Officer Cyr was "caught in a lie on the [witness] stand" because Miller demonstrated that his camera's LCD screen was broken, and thus Cyr could not possibly have viewed the photos on that screen, as Cyr had testified.[15] Miller complains that counsel failed to use this evidence to attack Officer Cyr's credibility, invalidate his testimony, suppress evidence, and expose the judge's bias.

At the court hearing on April 18, 2012, Officer Cyr admitted that he had improperly viewed non-pornographic vacation photos of Miller and L.A.J., prior to obtaining a warrant, and claimed he had viewed those photos on the LCD screen of Miller's camera.[16] However, the LCD screen was subsequently shown to be broken.[17] Contrary to Miller's claim, counsel did use Officer Cyr's testimony to attempt to attack Cyr's credibility and suppress the evidence. Counsel argued, "[T]he problem we're having is that we have got these federal agents that are either being grossly negligent or falsely testifying or omitting information that they shouldn't have." And further, "[Officer] Cyr's misconduct or omissions or falsehoods . . . can't just be ignored . . . it is just outrageous . . . and the affidavit [in support of the warrant] just should not stand." That defense counsel's argument was unsuccessful does not, in and of itself, constitute ineffective assistance. *See Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995) ("[U]nsuccessful trial tactics neither constitute prejudice nor definitively prove ineffective assistance of counsel.").

---

[15] Counsel argued at the suppression hearing that the defense evidence would be that the camera was not working, and counsel suggested "we should take a look at the camera to see if it is functioning and to see if, in fact, the LCD lens is working." Indeed, counsel demonstrated that the LCD screen did not function.

[16] Though Miller does not specify what court hearing he is referring to, it appears that he is referring to the hearing on April 18, 2012.

[17] The government admitted at the hearing that the camera's LCD screen did not work.

14

Miller has not shown that counsel performed below an objective standard of reasonableness. Accordingly, this claim will be dismissed.[18]

(4) Motion Related to Jail Transfer (claim 12)

Miller asserts that counsel should have objected to his transfer from Charlottesville to Lynchburg. Miller characterizes his transfer as "government interference" and complains that, at the Lynchburg jail, he could no longer have "face to face contact visits" with counsel, but instead was separated from counsel by soundproof glass, and had to use " 'push to talk' telephones" which made formulating a defense "burdensome." However, Miller admits that counsel was able to visit him following his jail transfer. Because Miller has failed to show that a motion objecting to the jail transfer would have been successful, or resulted in a reasonable probablility of a different outcome in his conviction or sentence, Miller has failed to allege deficient performance or prejudice. *See Strickland*, 466 U.S. at 687-91. Accordingly, this claim will be dismissed.

(5) Speedy Trial Act (claim 16)

Miller argues that counsel provided ineffective assistance by failing to file any Speedy Trial related motions. On July 12, 2011 and October 4, 2011, the government moved to continue the case due to a delay in obtaining a waiver of the Rule of Speciality from Italy.[19] Contrary to Miller's assertions, counsel did object to these continuances, arguing at the hearing on July 14, 2011 that Miller had been arrested and indicted months ago, had no criminal record, and had been cooperative. However, the court granted the government's motions, finding that granting

---

[18] Miller also asserts that he was removed "against his will from the courtroom while the judge, government and counsel had some sort of discussion" about Officer Cyr's testimony regarding how he "illegally viewed photos on [Miller's] camera." However, Miller fails to specify what discussion he missed, or how missing it harmed his case.

[19] A waiver in the Rule of Speciality was required under the applicable Extradition Treaty because the government had filed a superseding indictment following Miller's extradition from Italy, including charges different from those listed in the extradition request. The Doctrine of Specialty prohibits prosecuting an extradited prisoner for an offense other than that for which the surrendering nation agreed to extradite. *United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012) (citing *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992)) (collecting cases).

the continuance served the ends of justice.[20] Because counsel had already stated his objections and arguments to the court, Miller has failed to show that filing a motion outlining these same arguments would have been successful.[21] *See Oken v. Corcoran*, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to [take action if] . . . it would have been futile for counsel to have done so . . . ."). Accordingly, this claim will be dismissed.

### D. Ineffective Appellate Counsel

(1) Appellate Arguments (claim 17)

Miller asserts that counsel provided ineffective assistance by failing to argue to the Fourth Circuit that the officer's seizure of property at the traffic stop lacked probable cause and violated Miller's rights under the Fourth Amendment. This claim fails because appellate counsel is not required to present every claim, or even every non-frivolous claim, that his client wishes to assert. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) (noting that appellate counsel must "examine the record with a view to selecting the most promising issues for review."). Courts should ordinarily "find ineffective assistance for failure to pursue claims on appeal" only when "ignored issues are clearly stronger than those presented." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Miller has not shown that proposed argument was clearly stronger than the arguments counsel presented. Indeed, counsel presented a version of Miller's argument on appeal, namely,

---

[20] The Speedy Trial Act normally requires that a trial be held within 70 days of a defendant's first appearance in court, or after he is charged, whichever is later. 18 U.S.C. § 3161(c)(1). However, the Speedy Trial Act excludes from that time period any delays resulting from a continuance granted by the district court, provided that the district court finds that "the ends of justice served by [granting a continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. §3161(h)(7)(A).

[21] To the extent Miller claims counsel was ineffective for failing to make additional arguments related to the Speedy Trial issue, this claim fails. Counsel fulfilled his duty to consult with Miller regarding important decisions, *Strickland*, 466 U.S., at 688, and counsel is not required to obtain the defendant's consent to "every tactical decision." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (finding counsel must allow defendant to make only certain decisions, including "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal") (citation omitted); *see also Strickland*, 466 U.S. at 688 (noting counsel must "bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.").

that the affidavit submitted by Agent Lamb did not provide the magistrate judge with a sufficient basis to conclude that probable cause existed for a search warrant. *Miller*, 534 F. App'x at 208. Counsel also argued that the omissions and misstatements in the affidavit violated *Franks* and rendered the search warrant invalid. *Id.* Accordingly, Miller has not shown ineffective assistance of counsel under *Strickland*, and this claim will be dismissed.

      (3)  Withdrawal of Appellate Counsel (claim 18)

Miller asserts that counsel provided ineffective assistance by withdrawing after the Fourth Circuit affirmed the district court's rulings, based on counsel's assessment that further action would be frivolous, rather than filing a petition for rehearing or *certiorari*. Generally, a defendant has no constitutional right to the assistance of counsel to pursue a petition for a writ of *certiorari* in the Supreme Court. *See Wainwright v. Torna*, 455 U.S. 586, 587 (1982). However, where court rules define the duties of an appellate attorney regarding *certiorari*, counsel's failure to comply with such rules can provide a basis for a *Strickland* claim. *See United States v. King*, 11 F. App'x. 219, 220-21 (4th Cir. 2001); *see also* Plan of the United States Court of Appeals for the Fourth Circuit in Implementation of the Criminal Justice Act of 1964, Part V, § 2 ("CJA Plan") (October 1, 2008).

The CJA Plan requires appellate counsel to inform a defendant of his right to petition the Supreme Court for *certiorari* review, and to file a petition for writ of *certiorari* "[i]f the defendant, in writing, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review . . . ." CJA Plan § V.2, "Attorney's Duty to Continue Representation, Appellate Counsel." However, if "counsel believes that such a petition would be frivolous, counsel may file a motion to withdraw from this court wherein counsel requests to be relieved of the responsibility of filing a petition for writ of *certiorari*." *Id.*

17

On July 29, 2013, counsel sent Miller a letter notifying him that the Fourth Circuit had denied his appeal and stating, "If you wish me to file a petition for rehearing or a petition for *certiorari*, please let me know immediately, and I will do so." On August 7, 2013, counsel received a letter from Miller asking for further appeal. On September 20, 2013, counsel sent Miller another letter informing him that a *certiorari* petition would be frivolous, that counsel had filed a motion to withdraw, and that Miller had seven days to respond to the withdrawal motion. Counsel filed a motion to withdraw as counsel on September 20, 2013, advising the court that Miller had asked counsel to file a *certiorari* petition and that counsel believed such a petition would be frivolous. On October 9, 2013, the Fourth Circuit granted the motion to withdraw.

The evidence indicates that counsel complied with his obligations under the CJA Plan. Therefore, Miller fails to demonstrate that counsel's appellate representation was deficient. Miller clearly disagreed with the ruling of the Fourth Circuit; however, he fails to show that counsel provided ineffective assistance and this claim will therefore be dismissed.

**E. Search and Seizure of Evidence**

(1) Seizure of Property (claim 3)

Miller asserts that the government did not have probable cause to seize his property at the traffic stop and that counsel "just took this illegal seizure with a shrug." Miller states, "Before the FBI's affidavit in support of a warrant . . . there was no evidence or statement made at the scene that could lead to a reasonable finding of probable cause to seize any property."

The Fourth Circuit held that the government had probable cause to obtain a warrant to search the evidence. *Miller*, 534 F. App'x at 209. While the appeal focused on whether the magistrate judge had probable cause to issue a search warrant, the court's analysis also applies to whether the government had a basis to seize the property initially. Thus, claim 3 has already

18

Case 6:11-cr-00004-NKM   Document 160   Filed 07/09/15   Page 18 of 20   Pageid#: 1803

been reviewed and denied by the Fourth Circuit. Issues raised and decided on direct appeal may not be recast "under the guise of a collateral attack."[22] *Stitt*, 369 F. Supp. 2d at 685 (*citing Boeckenhaupt*, 537 F.2d at 1183). This claim will therefore be dismissed.

(2) Inventory Search (claim 4)

Miller argues that counsel should have "approach[ed] the inventory search" that occurred at the traffic stop as an illegal "general rummaging." Miller complains that the officers spent "at least two hours to 'inventory' eleven items." However, this claim is procedurally defaulted because Miller failed to raise it on direct appeal, and has not demonstrated "either 'cause' and actual 'prejudice'" for his default or that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted). Moreover, Miller has not shown that the inventory search was improper. *See United States v. Brown*, 787 F.2d 929, 932 (4th Cir. 1986) ("If the vehicle is in lawful custody, the police may inventory the vehicle, if such inventories are routine and conducted pursuant to the standard police procedures, so long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner."). Accordingly, this claim will be dismissed.

### IV.

---

[22] Miller also cites to *U.S. v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009), from the United States Court of Appeals for the Eleventh Circuit, arguing that the seizure of his computer equipment, "constitutes an unreasonable deprivation under [the] Mitchell doctrine." Miller complains that counsel failed to file a motion "based on the Mitchell doctrine." However, this claim is procedurally defaulted because Miller failed to raise it on direct appeal.

Moreover, this claim has no merit. In *Mitchell*, 565 F.3d at 1351, the Eleventh Circuit found that a 21-day delay between a valid warrantless seizure of a computer and the application for a search warrant was unreasonable. *Mitchell*, however, is both distinguishable from the instant case and, more significantly, highlights that no bright-line rule for unreasonableness exists, but rather a delay is evaluated on a case-by-case basis. *See Mitchell*, 565 F.3d at 1352 ("we emphasize again that we are applying a rule of reasonableness that is dependent on all the circumstances") (citation omitted); *see also United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) (finding a six-day delay not unreasonable, and citing cases with longer delays); *United States v. Camp*, 2012 U.S. Dist. LEXIS 5878, at *7, 2012 WL 148690, at *2 (E.D.N.C. Jan. 18, 2012) (finding that, after considering "all of the facts and circumstances surrounding the delay," a 19-day delay was justified) (citing *Mitchell*, 565 F.3d at 1351). Miller has not shown that the police failed to act with diligence in obtaining the relevant search warrant. Thus, Miller has not shown that the ten-day delay between the seizure of his computer and the issuance of the warrant was unreasonable.

19

For the reasons stated herein, I will grant the government's motion to dismiss.

**ENTER:** This  9th  day of July, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE